case number 241943. Good morning, Mr. Egan. Good morning. May it please the court. James 22k is unconstitutional on its face. The law, which criminalizes the receipt and possession of a firearm with a removed, obliterated, or altered serial number, regulates conduct that falls within the plain text of the Second Amendment. And the government, that is because it regulates the people who keep arms. The government has been unable to show that the law is consistent with the principles that underlie our nation's historical tradition of firearm regulation. And what is that tradition? Well, I think the government points to two lines. What do you say it is? Well, I think, from my understanding, is that it covers dangerous and unusual weapons. And it may cover regulations dealing with commercial sale, as this court addressed in Gazola. It's a right. So isn't it fair to say that it is the right of a law-abiding person to have a firearm for lawful purposes? I think that's certainly included within the right, Your Honor. So why would a law-abiding person seeking to defend himself or herself for lawful purposes want to have a gun with an obliterated serial number? There could be lots of reasons, Your Honor. I'm just asking. Well, first of all, that person may come into possession of it lawfully. And the serial number on the firearm may be removed through no fault of his or her own. It may become illegible through just wear and tear. As a general matter, what is the law-abiding reason one would possess a deserialized firearm? Because it works, Your Honor. Because it works for self-defense, just like any other firearm works for self-defense. And that is all the burden I have at Step 1 of Bruin, is to show that the law regulates the keeping of an arm. An arm, serialized or not, is a firearm. Government does not contest otherwise. It tries to shoehorn in this common-use concept, which I believe, Your Honor, has alluded to. But that is really an outgrowth of Step 2 and the dangerous and unusual regulation of dangerous and unusual firearms. So like machine guns, for example? Correct. Yeah. Now, the government argues, too, that the law does not infringe on any right. But obviously, there are three ways that the law infringes on a person's second-minute right. First of all, it prevents a law-abiding person to obtain a firearm that has an improperly serialized firearm. Second, it imposes a duty on that person to maintain that government-mandated marking on the firearm throughout their possession. And should the firearm, sorry, the serial number on the firearm become illegible or be removed, then that person must dispossess himself of the firearm. So these three ways in which a person is affected by this regulation. Well, you talk about how it becomes obliterated, but it becomes obliterated by taking a file or That's one way. Removing it. I mean, you have to make an effort to do that. I don't know why anybody would do that for a law-abiding, for a lawful purpose. The person, well, first of all, I know that I fully agree that that's the only way that it can happen. It can happen through no intentional act, through just wear and tear. Because you're using the gun so much. Yeah, sure. Or you keep it in a manner that upon making it accessible, it rubs up against, I don't know. I mean, I don't know either. But the point is, respectfully, it's not my burden to show why. But you can imagine a person, too, would prefer to remain anonymous, would rather not be implicated in the government's tracking and tracing program because it doesn't want to have to deal with So that seems to run headlong into the tradition. In other words, there are examples of the wanting to track different either forms of firearm or associated things like gunpowder and so on. And what is your response to that? I mean, your response just now is some people don't want to be tracked, but that is not a response with respect to the Second Amendment. What we're looking at is, I think what we're tasked with doing, among other things, is to determine whether there is a history of government regulation in certain areas, right? Is that correct? Once you get to step two, correct. What a person may want or not want, I think, is irrelevant to that question. So is there not a certain forms of dangerous products like gunpowder and even firearms, obviously, notwithstanding what someone might, may or may not want, that is the firearms holder? Yeah, putting aside the firearm holders' personal preferences, if we're getting into step two, and we're dealing with the regulation, the historical tradition of regulating firearm, the Second Amendment has proffered some colonial era regulations that deal with manufacturers and their requirement to put markings on gunpowder barrels and to prove and mark, in two instances, firearm barrels themselves. Those markings deal with tracking the manufacturer. They don't deal with tracking the possessor. So they are different, both as to the burden placed on the person and in the government, to back up slightly, the government offers only a couple instances where it was criminal to alter the mark, but it offers no instance in which it was criminal to possess a firearm that had the marking had been altered in some way. Now, there's this difference in burden, but there's also a difference in justification. Those are about consumer related regulations that are meant to protect the user of the gun from, I guess, a firearm that doesn't operate safely as intended. Here, we're dealing with trying to trace the criminal use, I guess, try to solve crimes, which is not the justification of the colonial era regulations. So it doesn't fit within that line of historical tradition. But it doesn't have to fit squarely within the line. Yeah, but it has to be comparable. So long as it's generally analogous, right? No, the argument, I'm sorry, it has to be consistent with the principle. Yes. And in comparable, burden comparable justification, how and the why. The how and the why are both not related. They're not comparably related. They deal with manufacturers. We're dealing with possessors and they have the core second in the right. The manufacturer is just a secondary to the possessor under Second Amendment law, right? Under guise of a law and the like. May I ask you, just to be very clear, so Mr. Gomez is free to buy, well, maybe prior to this, was free to buy a Glock 17 and have all of its self-defense benefits so long as it has a serial number. Is that correct? You're asking if my client was free to purchase a gun properly serialized? I'm not sure, Your Honor. He was robbed in 2020, the time of pre-Bruin, when there was a, you know, the May permit regulation. I don't know that he would have gotten a, would he be able to show a need to satisfy that regulation, to carry the firearm for self-defense. So I'm not sure if he could have purchased a firearm under that regime at that time. So there might've been another reason to bar him from carrying that firearm? Is that what you're suggesting? An unconstitutional one, yes. Another unconstitutional one? Correct. That was deemed unconstitutional in Bruin. Thank you very much. And I think you've reserved some time for rebuttal, Mr. Egan. Thank you. Mr. Rothenberg. Good morning, and may it please the court, Joshua Rothenberg for the government. The presence or absence of a serial number on a firearm for lawful purposes, for Second Amendment purposes, is purely aesthetic, and therefore the government can regulate it. And we have. 922K requires only that a person not possess a firearm with an altered or obliterated serial number, but as Your Honor noted, you could purchase the exact same firearm with the exact same benefits for self-defense as long as it had a serial number. You can also purchase one that doesn't have a serial number at all. That's correct, Your Honor. It was manufactured before 1968 or so. Yes, Your Honor. And also if it was a self-made firearm, there's no requirement to serialize. So, I mean, what's the difference? If you can have one that has no serial number at all, why is it a criminal to possess one in which the serial number was put on, but then was removed? Well, Your Honor, I think it's the self-manufacturing is a much, it's not a recent phenomenon, but it certainly has taken on a new meaning in recent times, Your Honor. The pre-1968 limitation was specifically so as to not burden people who had lawfully purchased guns before the serialization requirement came into being in 1968. So it was a direct attempt to be sensitive to the possessor of guns, rights to those guns, whether Second Amendment or otherwise, at that time. Now, I will point out in Bruin, the Supreme Court rejected any sort of means and scrutiny. So even if there are some holes in the regulatory scheme as it currently exists, the only question is whether the text of the Second Amendment, as historically understood, would protect this, and if so, whether there is a historical tradition. And our view is that the text of the Second Amendment only protects the right to keep and bear arms. It does not protect the aesthetic characteristics of those arms. Just as a preliminary matter, this issue is a matter of first impression, correct, in this court? Yes, Your Honor. And you have the burden, correct? We do not believe so on the first step. We believe on the first step, the defendant has the burden, much as in the First Amendment context, the defendant would have, or the, I should say, the challenger, that the challenger... But if it's a criminal case, why don't you have the burden? Because the defendant here is challenging the constitutionality of the statute. And so she needs to show, and that it is within the ambit of that... Don't you have a burden to show me under reasonable doubt that the defendant has violated a federal law that is constitutional? I don't think we have the burden of showing that the law is constitutional if the defendant has not shown that the constitution is at all implicated, which we do not believe he has. That being said, whether we have the burden or not, I think we've met it, Your Honor. So just so that I understand, because I have the same set of questions about the burden, your view that the government does not shoulder the burden here rests on the notion that the Second Amendment is not implicated at all in connection with this challenge to 922K. It's not directly implicated, I should have said, Your Honor. It's not directly implicated. Yes. Okay. Could you take me through that? Because I'm not sure that I fully understand that. And I know that other courts have suggested that, but take me through that. Yes, Your Honor. So our view is that the Second Amendment protects the right to keep and bear arms, not any specific arm with a specific aesthetic characteristic. In Heller, the Supreme Court made clear that arms with a functional characteristic might be protected, but aesthetic characteristics we do not think are protected by the Second Amendment because they in no way affect a defendant's ability to Defend himself or herself.  And so we do recognize that, as this Court noted in Gozola, regulations which might be in the rough area could theoretically impose such a burden that they would then implicate the Second Amendment. We don't think that's true of 922K. Is there another circuit that has made this distinction between functionality and aesthetics with respect to the Second Amendment analysis? Not directly, Your Honor. Judge Niemeyer in the Fourth Circuit.  In his concurrence. And I think the Marzarella case, which has been since abrogated by Bruin in the Third Circuit, does touch on this. But again, this is a case of first impression, and there are relatively few, especially post-Bruin cases, about the constitutionality of 922K. So we would say it's for lack of opportunity. If we reach Bruin step two and get to historical analogs, don't you concede that you're in trouble because there were no serial numbers on guns. I mean, they weren't even manufactured, you know, in numbers until Samuel Colt invented interchangeable parts in the 1830s, half a century after the founding of the country. Well, as the Supreme Court said in Rahimi, the Second Amendment is not a law trapped in amber, and we do not have to find a historical twin. We think that the barrel-proofing marking laws, we think that the dangerous and unusual weapons laws, are two distinct historical traditions, both of which this is sufficiently analogous to, to survive. As Your Honor noted, this may have been partially a technological limitation, but in our brief, we point out that George Washington required revolutionary war arms to be marked with an insignia. This is not something that is a completely newfangled idea. It's just a new way of doing what people have been doing the whole time this country has existed or even been in the U.S. It's a way of tracking the stockpile of firearms. Yes, Your Honor. Okay. So just to go back to step one, can you take me through a little bit of this? So how do I determine what is aesthetic and what is functional? Or is it obvious? Well, I think in this case, it's obvious. In general, because you're asking us to make a distinction between what is an aesthetic feature of a gun and what is a functional feature of a gun. Is that part of the record here? That's number one, but I think this is more or less a constitutional challenge. How do I, or how does a court determine the difference between a functional aspect and aesthetic aspect? Or is that just so obvious to any reasonable observer that we could tell? So, Your Honor, I think the question is whether there is some functional benefit for armed self-defense. Now, the defendant here has conceded that there is no functional benefit for armed self-defense. That in the brief, the defendant says there is no functional purpose to a serial number. We agree with that. So I think in this, and that's why I was saying it was clear in this case, because the parties are in agreement. I certainly agree that if it were, for example, the color of a firearm and someone came to you and said, well, actually, this can help ward off people, then at that point, I think ideally a district court would need to dive into the facts there, make a factual finding, and this court would need to review that factual finding. But in this case, I don't think it's conceded. And I think with serial numbers, it's very clear that there's no benefit to a serial number for armed self-defense purposes. If I may stay on Bruin Step 1, Your Honor, we also view the common use requirement as part of Bruin Step 1. Sorry, Your Honor. No, please. I'm sorry to belabor this point, but you say that it's aesthetic because there's no, it's of no use to the carrier, to the holder of the weapon, right? No lawful. No lawful. Yes, Your Honor. No lawful use. So, so there's no part of the analysis looks at whether it's of use to the government when determining whether it's aesthetic or functional. Is that, is that the answer? I think that's right, Your Honor. With the exception of obviously we have to satisfy rational basis under the due process clause. But yes, I think that the question is just whether this is an aesthetic part of a second amendment and would only be protected if in fact it had some substantial burden as in Gazola. So it is entirely a function, to use that word, of, um, it's, uh, uh, or by reference to self-defense of the holder. I think any lawful second amendment purpose, which the core of which is self-defense of the holder, defense of home perhaps, or family could also, uh, enter into the equation. Any lawful purpose by the holder. Yes, Your Honor. I'm having trouble with that distinction between functional and aesthetic. Um, I mean, a license plate on a car is not an aesthetic thing. It's functional. It has to do with whether you can identify the vehicle who it's registered to. So that's a function just because the functional nature of a serial number on a gun is to permit, um, the, uh, the, the police to figure out where it came from. I'm not sure that makes it aesthetic. I mean, who, who enjoys the serial number on their gun? That's fair, Your Honor. Perhaps aesthetic is the wrong word. I think what I'm trying to say is perhaps what I'm trying to say is since it does not help you in second amendment purposes at all, we are allowed to regulate it. I think it is aesthetic in the sense that it only affects the appearance of the gun. Again, from the holder's perspective, it only affects the appearance of the gun and not its function. But if the word aesthetic is not the right word, Your Honor, the sentiment, not that's coming to mind and probably not that will come to mind in the time, Your Honor, but I think the point is non-functional perhaps. It is a non-functional feature for second amendment purposes, for second amendment purposes, for lawful self-defense, for the firing of the gun, for the ability to defend yourself. There is nothing that the serial number helps or hinders you with. And that we think is what prevents it from being an infringement. Try identifying. It's an identifying feature. Yes, Your Honor. I like that word much better. I wouldn't have come up with it. If I may briefly address the common use requirement, we do think that in Antonyak, this court made clear that the common use requirement is part of the first step of Bruin. The defendant has not tried to show that the firearms here are in common use, and we have proffered a variety of different ways that you can see that they are not, including the fact that they are very rarely recovered. They do not appear to be a large portion of the national firearm stock. With that said, Your Honor. Is that the 2% or roughly 2% number? Is that right? That's part of it, Your Honor. Yes. There's also the sort of reasoning from first principles that the fourth circuit did where they said, look, if it's particularly useful for use in crime, the fact that it's not showing up a lot in crime strongly suggests that it's also not going to show up a lot in the general populace. And we've nothing to the contrary. I'd be happy to answer any further questions the court may have. Thank you very much. Thank you, Your Honor. A couple of things. The government frames the common use test in a way that ensures that we'll always be able to regulate the firearm. It says it defines the firearm by the prohibited characteristic, in this case, the improper serialization, and then says, well, nobody, the only person who would have that is, sorry, no lawful person would have a firearm that has the improper serialization. But that's of course the case that only a criminal would use an improperly serialized firearm according to them. So of course there's no common use, right? It stacks the deck in their favor. Well, you're saying it's circular. It's a circular argument, right? You put the thing in the beginning and then it comes out in the end. And of course the test is satisfied because it's going around. Now, the better question is, were firearms without serialization common before 1968? And the answer is yes. That's the question. So what if I disagree with you and think that the better question is after 1968, what is there that would tell me that these are in common use in a way that makes sense for Second Amendment purposes? Because I've noticed before, the firearms still operate for self-defense. There's no, the serial number working, proper or improper, has no effect on the firearms ability to defend itself. Well, that's not quite answering my question. Is there something that we can refer to to determine that in fact these deserialized or obliterated serial number guns, firearms, are in common use as we understand that for Second Amendment purposes? Well, that's a step two question. It rises out of a step two question. You're putting the burden on us to show something that's entirely impossible for me to show how common it is. They've cited a study that shows it's not even common in criminal cases, 2% of criminal cases in which an improper serial number firearm was recovered. So to show that then that it's not in common use for lawful purposes is a remarkable leap of logic. It's not supported by their evidence. Let me ask you another question. You heard the colloquy about functional versus, now I guess we're calling identifying non-functional or aesthetic. And Mr. Rothenberg said that you have conceded that there is no functional, and I Is that correct? There is no functional purpose. That's why it's not dangerous. That's why it doesn't fit within the dangerous and unusual tradition of regulating firearms. That's the way out of this problem. This functional identifying slash aesthetic problem. I mean, the irony is that you're both using the distinction in one sense for your own purposes and say, and then ask us to conclude or draw from that very different conclusion. Because I think the simpler path is just to say, textually, all that was required, I even carry the burden, which is not clear following Bruin, excuse me. But even if I do, it's just people bear keeping arms. That's it. And that's what this regulation does. Whose burden is it in this case to show that, um, that, um, the offense is one that is permit is, is, uh, uh, is one that the state may outlaw constitutionally. I think, as you noted earlier, judge Jacobson in your questioning, I think it is their burden to show beyond a reasonable doubt that statute has been violated and then don't meet up with words in your mouth, but, uh, and then also in Bruin, Bruin was dealing with the post means and scrutiny that had developed in the, in the court of appeals. There, there were two steps. The government had to show first that the conduct fell outside of the history and text of the second amendment. And then, and if so, that it satisfied or stricter, I mean, in radius, but they removed the second step, left the first step and the burden in that was on the government, that's where it should remain, uh, on the government. Thank you. Yes. Thank you very much. What was that decision? A very helpful.